* Parker, C. J.
The question, which appears most [ * 197 J to have engaged the counsel in support of the certiorari, viz. whether the removal of the soldier beyond the limits of the company of cavalry, and even into another brigade, and his fixed residence in his new domicil, did not make him liable to do duty in the company of militia within whose limits he had removed, we have considered of some importance, as it is likely to have an extensive influence.
There is nothing positive or direct in the law regulating the militia, upon the subject; but we think the meaning of the legislature may be clearly inferred from the general tenor of the sections of the act which relate to the raising of volunteer companies. It is apparent that these companies are to be raised within the brigades, and that none can be lawfully enlisted without them. It seems also that the executive department, by virtue of authority vested in them by the second section of the statute, have assigned certain limits, within which this company was to be raised. Now, if a person, not living within the limits of one of these companies, cannot lawfully be enlisted into them, we think it follows of course that, when such person has removed permanently beyond those limits, he must cease to belong to the company, and may be enrolled in the regular militia company, within the limits of which he dwells. If he should *168 be held to serve two masters, it must be of his own choice; for upon application to the commander, stating his removal, he would be entitled to a discharge.
We do not think that the section of the act, which provides for the continuance for at least seven years in the company into which a soldier has vduntarily enlisted, can be held to apply to those who have removed out of the brigade, within which the company is raised. If it should, a person once enlisted might be required to attend a muster, however distant his domicil upon removal may be from the limits of the company.
* 198 ] * As to the manner in which the clerk was appointed, or rather as to the manner in which his appointment is certified, there appears a defect only in form, not in substance.
But with respect to the service of notice upon the respondent, for. the training which he did not attend, which was the offence complained of in this process; we are sorry, after much consideration, to pronounce it bad; but we are obliged so to do. The statute requires that the notice shall be delivered to the soldier in person, or left at his usual place of abode. It appears by the record brought before us, that the notice to the respondent was not delivered to him in person, but left at his shop or place of business. There was no evidence that he had received actual notice; and he can only be bound, if it be served according to law. The usual place of abode has been always construed to be the dwelling-house. It has this application in all our civil processes; and it is impossible to give it any other. There is also sufficient reason for the legislature to require this kind of service ; for in a man’s house some one is always present, who will receive the notice, and will communicate it. But a man may be often absent from his shop, without leaving any one to act for him in his absence. We think, for this cause, the proceedings are incorrect, and ought to be quashed.

Proceedings quashed.